MILLER v. NORTHERN BREWERY CO.

(District Court, D. Oregon. May 21, 1917.)

No. 7005.

1. GUARANTY ⊚⟿77(2)—RIGHT OF ACTION—NECESSITY OF PROCEEDING AGAINST PRINCIPAL—"ABSOLUTE GUARANTY"—"CONDITIONAL GUARANTY."

A guaranty of the faithful performance of all the terms and covenants of a lease, including the payment of rent, was an absolute and not a conditional guaranty, and the lessor could sue thereon without exhausting his remedy against the lessee; a "conditional guaranty" being one importing the happening of some contingency other than the default of the principal debtor, and being usually an undertaking to be liable for the principal's default in case satisfaction cannot be obtained from the principal without reasonable diligence, while an "absolute guaranty" is one under

⊚⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which the liability of the guarantor is fixed by the failure of the principal debtor to pay at maturity.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 89.

For other definitions, see Words and Phrases, First and Second Series, Absolute Guaranty; Conditional Guaranty.]

2. CORPORATIONS ⊕484(3, 4)—CORPORATE POWERS—GUARANTOR OR SURETY.

As a general rule no corporation has power, without express authority conferred by the corporate articles, to become a surety or guarantor for another by any form of contract or indorsement.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1815.]

3. CORPORATIONS ⊕484(3)—CORPORATE POWERS—GUARANTEEING PAYMENT OF RENT.

A corporation authorized to manufacture, buy, sell, and deal in beer and other liquors, and to do all things incident to or convenient in carrying out such purposes, had authority to guarantee the payment of rent under a lease to persons who agreed to handle its beer in any saloon conducted upon the leased premises, and who further agreed that their failure to handle its beer should operate as an immediate assignment and transfer of the lease to it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1815.]

At Law. Action by Alex E. Miller against the Northern Brewery Company. On demurrer to the complaint. Demurrer overruled.

Sol Bloom and W. M. Gregory, both of Portland, Or., for plaintiff. Dolph, Mallory, Simon & Gearin, of Portland, Or., for defendant.

WOLVERTON, District Judge. This is an action to recover against the defendant upon its guaranty. The defendant, by its corporate powers, is authorized:

"To manufacture, produce, buy, sell and deal in and with beer, ale, malt liquors, malt, ice and other similar products, brewers' supplies, tools, implements and machinery and utensils of all kinds, and to do all things incident to or convenient in carrying out the foregoing purposes."

On September 18, 1911, the plaintiff entered into a lease of certain premises to E. J. Blazier and August Kratz, for a term of 10 years, at a certain rental, payable in monthly installments. On the same date the defendant corporation entered into a contract of guaranty with the plaintiff, whereby it is stipulated that:

"The undersigned, for itself, its successors and assigns, does hereby guarantee the faithful performance of all of the terms and covenants of the foregoing lease on the part of the said E. J. Blazier and August Kratz, the lessees therein named, including the payment of the rentals therein provided for."

On the same date, also, the defendant entered into an agreement with Blazier and Kratz, whereby Blazier and Kratz agreed to handle, in any saloon or saloons that might be conducted upon the leased premises, only the draught and home-bottled beer manufactured by the Northern or Star Brewery Company. It was further agreed that default of the said Blazier and Kratz in selling the product of the defendant company over their counter should operate as an immediate assignment and transfer to the defendant of all the right, title, and interest of the said lessees in and to said lease, and that thereupon the

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

defendant should have the right to assume control, under the terms of said lease, of said property. The prayer is for certain unpaid rentals upon said lease.

The defendant company has interposed a demurrer to the complaint, and two grounds are urged in support thereof, namely: (1) That the defendant company is not liable, for the reason that the act of guaranteeing the payment of the rentals upon the lease was ultra vires and beyond the power of the company to undertake; and (2) that the plaintiff is not entitled to sue upon such guaranty until after he has exhausted his remedy against the lessees in the lease. I will discuss the last contention first.

[1] On the part of the plaintiff it is urged that the guaranty of the defendant company is absolute, and not conditional, and that therefore he is not required to exhaust his remedy against the principal before he is entitled to proceed against the guarantor. The question thus hinges upon whether this is an absolute or a conditional guaranty of which we are treating.

"A conditional guaranty imports the happening of some contingency other than the default of the principal debtor. The usual form of the conditional guaranty is an undertaking whereby the guarantor is liable for the principal's default in case the satisfaction of the principal obligation cannot with reasonable diligence be obtained from the principal. An absolute guaranty of payment differs from a conditional guaranty against loss as the result of nonpayment of a debt in that in the first case the liability of the guarantor is fixed by the failure of the principal debtor to pay at maturity, while in the second the contract is in the nature of a guaranty of collection, no liability being incurred until after, by the use of due diligence, the guarantee has become unable to collect the debt from the principal debtor." 12 Ruling Case Law, § 13, p. 1064.

The distinction is very well illustrated by two cases which I shall cite:

In Pierce et al. v. Merrill et al., 128 Cal. 464, 61 Pac. 64, 79 Am. St. Rep. 56, the defendants guaranteed payment of a note and mortgage at the times and according to the terms expressed therein, and it was held that the guaranty was not one with a condition precedent for the enforcement of defendants' liability—that it was absolute. It was said by the court, quoting from the local statute, which is simply a statement of the law as it prevailed prior to the adoption of the same, that:

"A guaranty is to be deemed unconditional unless its terms import some condition precedent to the liability of the guarantor."

And further:

"To hold that payment was not to be made by defendants until after a foreclosure of the mortgage would be to ignore their agreement that payment should be made 'at the times and according to the terms of said note and mortgage.'"

In Burton et al. v. Dewey et al., 4 Kan. App. 589, 46 Pac. 325, the guaranty was against any loss by reason of a loan negotiated, and it was held to be a conditional guaranty, and that the guarantee was not entitled to recover as a result merely of the nonpayment of the debt, nor "until it is shown that the debt is not, by reasonable effort, collectible from the principal debtor."

The guaranty in the case at bar is for the faithful performance of all of the terms and covenants of the lease, including the payment of rentals; and I am impressed that the proper construction of such guaranty is that it is absolute in its terms, and not conditional, and that the defendants' contention, therefore, cannot prevail.

[2] Now, as to the question whether the guaranty was ultra vires of the power of the corporation, the general rule is that, without express authority conferred by the corporation articles, no corporation has the power, by any form of contract or indorsement, to become a surety or guarantor for another. Carney v. Duniway, 35 Or. 131, 138, 57 Pac. 192, 58 Pac. 105. So it has been held that:

"A railroad corporation, unless authorized by its act of incorporation or by other statutes to do so, has no power to guarantee the bonds of another corporation; and such a guaranty, or any contract to give one, if not authorized by statute, is beyond the scope of the powers of the corporation, and strictly ultra vires, unlawful and void, and incapable of being made good by ratification or estoppel." Louisville, etc., Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 567, 19 Sup. Ct. 817, 823, 43 L. Ed. 1081.

[3] But it is insisted upon the part of the plaintiff that the act of the defendant company in guaranteeing the payment of rents under this lease was not strictly beyond its corporate powers, but that it was incidental to the authority conferred by the articles of incorporation. In the case of Winterfield v. Cream City Brewing Co., 96 Wis. 239, 71 N. W. 101, which is a case almost parallel to this, it is held that the company did not exceed its corporate authority in guaranteeing contracts of this nature. The court there said:

"The purpose of the defendant's organization was to manufacture and sell beer. Doubtless it was competent to make any contract, which was convenient and adapted to further that purpose, which was not against public policy. No doubt, it was within its competency to rent a place for the sale of its beer by its agents or servants. To rent a place where one of its customers should retail its beer would seem, in a similar manner, to further the purpose of its incorporation. At least, it is not clearly foreign to that purpose."

And so, in the case at bar, the defendant company was engaged in the manufacture and sale of its beer, and it not only entered into the obligation of guaranteeing the payment of the rental upon the leased property wherein its beer was to be sold, but it went further, and entered into an agreement with the lessees whereby the default or refusal of the lessees to sell its beer over their counters would operate as an immediate assignment and transfer of the lease to the defendant. So that this case is even stronger against the defendant than the Winterfield Case.

Another case, from Michigan, is very much in point, that of Timm v. Grand Rapids Brewing Co., 160 Mich. 371, 125 N. W. 357, 27 L. R. A. (N. S.) 186. In that case the purpose of the brewing company, as stated in its articles, was "the manufacture and sale of malt and all kinds of malt and fermented liquors and aerated and charged waters." The corporation became the surety upon a bond of a saloon keeper, who agreed to sell its beer; and it was held, after very careful and well-reasoned consideration by the court, that the act of the corporation was not beyond its corporate authority.

In view of these authorities, and the principles therein promulgated, I am impelled to the conclusion that the defendant in the present case is liable, under the allegations of the complaint.

The demurrer will therefore be overruled.