## Louis Turk, Appellant, v. United States Fidelity and Guaranty Company, Appellee.

### Gen. No. 36,670.

Opinion filed June 20, 1934. Rehearing granted and opinion confirming original opinion filed October 24, 1934.

AARON SOBLE, for appellant; IRVING GOODMAN, of counsel.

EUGENE P. KEALY, for appellee.

MR. JUSTICE HALL delivered the opinion of the court.
This is an appeal from a judgment of the superior court of Cook county sustaining a demurrer to the second amended declaration of defendant filed in a suit on a bond given by defendant to plaintiff, conditioned upon the faithful performance of a building re-

modeling contract in writing, entered into between the plaintiff and one A. E. Bjork.

By this agreement, Bjork agreed to furnish all labor and materials necessary to move back and reset a building of plaintiff at 725 North Western avenue, Chicago, for the agreed price of $6,700. The moving and resetting was made necessary by the widening of the street named. The contract between plaintiff and Bjork, which is set forth in the declaration, contains detailed specifications as to the manner in which the work to be performed should be done, and the terms of payment are provided for as follows:

"$1,000.00 to be paid when rear of building has been excavated 2′ 0″, necessary new footings built in rear preparatory to the moving, and the necessary holes cut for loading of building.

"$3,000.00 to be paid when building has been moved to new location and money shall have been received from the City of Chicago, under the award.

"$1,000.00 to be paid when sewer, water and plumbing has been taken care of and building bricked back.

"$1,700 to be paid within ten (10) days after the contract has been fully completed and waivers of lien executed and delivered."

The contract between plaintiff and Bjork also contains the following:

"It is further stipulated between the parties that in case the party of the second part shall commit any breach of the covenants or agreements in the contract, specifications and plans, party of the first part shall have the right to terminate the contract, and engage another contractor to complete the job, *and the party of the second part is to be liable for any and all damages and such damages are to be deducted from part of the contract price that should remain due party of the second part.*

"It is further agreed by and between the parties that the work upon said job is to be commenced on the

9th day of July, 1930, and is to be finished not later than the 17th day of September, 1930, and for each day that it shall take said party of the second part after the 17th day of September, 1930, to complete the job, said party of the second part shall pay as liquidated damages to said party of the first part, the sum of Fifteen Dollars ($15.00) per day. Allowances shall be made to the contractor for time lost by reason of strikes, act of God, or the public enemy, lightning, earthquake, cyclone or rainstorms, or for causes beyond the control of the contractor.''

The conditions of the bond upon which defendant is sued, are as follows:

''*The condition of this obligation is such that if the said principal shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled,* and shall keep the said obligee harmless and indemnified from and against all and every claim, demand, judgment, lien, cost and fee of every description, incurred in suits or otherwise against the said obligee, growing out of or incurred in, the prosecution of said work according to the terms of the said contract, and shall repay the said obligee all sums of money which the said obligee may pay to other persons on account of work and labor done or materials furnished on or for said contract, and if the said principal shall pay to the said obligee all damages or forfeitures which may be sustained by reason of the nonperformance or malperformance on the part of the said principal of any of the covenants, conditions and stipulations and agreements of said contract, *then this obligation shall be void; otherwise, the same shall remain in full force and virtue.*''

The declaration contains the statement that ''Bjork was unable to complete the work by him assumed to be performed in the said contract by the 17th of September, 1930, and that on request of the said Bjork, the

plaintiff gave the said Bjork an extension of time for the period of 15 days to and including the 2nd day of October, 1930, within which to complete the said work,'' and that defendant, by the instrument in writing, consented to the granting of the extension.

It is alleged that on or about the 1st of September, 1930, plaintiff was informed by Bjork that the rear of the building had been excavated to 2′ 0″, that where necessary, new footings had been built in the rear preparatory to moving the building and that the necessary holes had been cut for the loading of the building, and from the fact that he, plaintiff, *could not, on an examination* of the premises, discover the truth of the representations made by Bjork, and relying upon Bjork's representations, paid him $1,000, but that since making such payment, he, plaintiff, had discovered that the work alleged to have been done as above set forth had not been accomplished in a first class workmanlike fashion. It is further alleged that on the 20th of September, 1930, plaintiff, being informed by Bjork that the building had been moved to its new location in accordance with the specifications and contract, and from the fact that he, plaintiff, *could not from an examination,* discover the truth of Bjork's representations, paid Bjork the sum of $3,000, and alleges that since such payment, he had learned that the work in connection with moving the building to its new location was inefficiently and unskillfully done, that the building will have to be moved back to its old location and the foundation refinished before the building can safely be permanently moved to its new location. It is also alleged that on the 8th day of October, 1930, relying upon the statement of Bjork that the building had been bricked back in accordance with the specifications in the contract, that sewer, water and plumbing had been properly taken care of, plaintiff paid the sum of $1,000 on account of the work done,

and alleges that he, plaintiff, *could not, from an examination of the premises,* discover the truth of the representations made by Bjork, but that he has since learned that the building was not bricked back, and that the sewer, water and plumbing had not been taken care of in accordance with the specifications, but that leaky and defective pipes were used, and in other ways, the specifications of the contract were not lived up to. The entire amount paid by plaintiff to Bjork was $5,000.

It is alleged by plaintiff that after learning that the work had not been done according to the specifications, which seems from the declaration not to have been difficult of ascertainment, he exercised his right under the contract to prohibit Bjork from doing any further work under its terms, and engaged another contractor to complete the work, and that the last mentioned contractor did complete such work according to the plans and specifications at a cost to plaintiff of $3,366.22; that the work was not completed until December 10, 1930, or 67 days beyond the time in which Bjork agreed to perform the work; that he is entitled to recover the sum of $15 per day for 67 days, or a total of $1,005; that in addition to the sum mentioned, he had been compelled to pay out the sum of $500 in attorney's fees, and that his total damage by reason of Bjork's failure to perform the contract as agreed, amounts to $4,871.22, together with interest, which he seeks to recover.

As stated the contract between the plaintiff and Bjork, with the plans and specifications a part thereof, contains distinct details as to how the work should be done, and distinct terms as to when payments should be made by the plaintiff to Bjork, and the defendant here had a perfect right to rely upon plaintiff's compliance with these terms and on his not making the payments to Bjork until the work had been done as

agreed. Plaintiff was not justified in relying upon Bjork's statement to the effect that the work had been so done if this was not true. A familiar case is one where a reserve fund is retained by the builder, to be paid only upon the completion of the work, and it has frequently been held that if the principal, in other words the owner, violates these provisions of the contract and pays the contractor before the work is completely performed according to the plans and specifications, the surety is not to be held liable. Upon this question, the Supreme Court, in the case of *Finney v. Condon,* 86 Ill. 78, makes the following statement:

"The law upon this subject seems to be, the reserved per cent to be withheld until the completion of the work to be done is as much for the indemnity of him who may be a guarantor of the performance of the contract, as for him for whom it is to be performed. And there is great justness in the rule adopted. Equitably, therefore, the sureties in such cases are entitled to have the sum agreed upon held as a fund out of which they may be indemnified, and if the principal releases it without their consent it discharges them from their undertaking. The principle is, the withdrawal of the fund agreed upon as security for the performance of the contract without his consent is a prejudice to the surety or guarantor. Sureties and guarantors are not to be made liable beyond the express terms of their engagements. They have the right to prescribe the terms and conditions on which they will assume responsibility, and neither of the principals can change those terms without the consent of the sureties, even with a view to avoid ultimate liability. As sustaining the views expressed, we cite the following authorities: *Ryan v. Trustees of Shawneetown,* 14 Ill. 20; *Calvert v. London Dock Co.,* 2 Keen 638; *Steam Navigation Co. v. Bolt,* 6 C. B. (N. S.) 550."

To the same effect is the case of *Castle v. Powell,* 261 Ill. App. 132, where this court cites *Finney v. Condon, supra,* as authority, and says:

"A guarantor may impose any terms or conditions in his guaranty which he may choose and will only be liable to the holder according to the terms of the agreement. (*Ryan v. Trustees of Town of Shawneetown,* 14 Ill. 20, 24; *Finney v. Condon,* 86 Ill. 78, 81; *Illinois Surety Co. v. Munro,* 289 Ill. 570, 574.) The nature and extent of the liability of a guarantor depends upon the terms of his contract, and he will be held liable for all that is done by his principal that was contemplated by his contract, but he will not be held liable beyond the strict terms of his contract. Brandt in his work on Suretyship and Guaranty (3d Ed.) Vol. 1, sec. 106, said: 'A rule never to be lost sight of in determining the liability of a surety or guarantor is, that he . . . has a right to stand upon the strict terms of his obligation, when such terms are ascertained. . . . It will not be implied that the surety has undertaken to do more or other than that which is expressed in such obligation, . . . Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation, he is bound and no further.' "

Defendant here insists that the words in the building contract between plaintiff and Bjork, "and the party of the second part (Bjork) is to be liable for any and all damages which might ensue as a result of such breach, and such damages are to be deducted from part of the contract price that should remain due party of the second part," mean what they say. In order to give these words their meaning and significance, they must be considered in connection with the entire paragraph of which they are a part, to wit: "That in

case the party of the second part (Bjork) shall commit any breach of the covenants or agreements in the contract, specifications and plans, party of the first part shall have the right to terminate the contract and engage another contractor to complete the job, *and the party of the second part is to be liable for any and all damages, and such damages are to be deducted from part of the contract price that should remain due party of the second part.*'' By this clause in the contract, plaintiff was given the right to terminate the contract upon determining that Bjork was not complying with its terms, and to retain such portion of the contract price as would compensate him ''for any and all damages'' as might result from Bjork's failure to perform. This he did not do. We hold that the court was not in error in sustaining the demurrer to the declaration. The judgment is affirmed.

*Affirmed.*

WILSON and HEBEL, JJ., concur.

### ON PETITION FOR REHEARING.

This case was decided at the June term of this court, and a rehearing granted.

Upon full consideration of the opinion hereinbefore rendered, the conclusion of the court is that the original opinion should prevail. The judgment is affirmed.

*Affirmed.*

HEBEL, P. J., and WILSON, J., concur.